IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-CV-01691 |
| | ) | |
| MARY DIANE SCHWARZ, P.A. and | ) | |
| CHRISTINE BRANNON, Warden | ) | Hon. Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

**Defendant's Motions *in Limine*** 

Defendant, Mary Diane Schwarz, PA, by her undersigned counsel, respectfully moves this Honorable Court to enter the following orders *in limine*:

1. **Barring, or in the alternative limiting, the testimony of Dr. Barkoff:**

   A. **Barring Dr. Barkoff from testifying as to the standard of care of a physician's assistant.**

Plaintiff has filed this lawsuit against Mary Diane Schwarz, PA alleging that her treatment of Mr. Williams was negligent and deliberately indifferent. Plaintiff has disclosed one expert to support his claims, Marla Snyder Barkoff, MD. *Initial Report of Dr. Barkoff* (2/27/17), attached as *Exhibit A*. Dr. Barkoff is a medical doctor that specializes in the practice of endocrinology. *Id.* at 5–6. Defendant, Ms. Schwarz, is a physician's assistant. Dr. Barkoff should be barred from testifying that Ms. Schwarz's care was negligent or deliberately indifferent because she lacks the foundational requirement to opine as to what care a physician's assistant provides.

This because in Illinois, it is well-settled law that there is a foundational requirement that each expert called to testify at the time of trial be a licensed member of the school of medicine

about which he or she proposes to express an opinion. *Alm v. Loyola University Medical Center*, 373 Ill. App. 3d 1, 4 (1st Dist. 2007) (citing *Purtill v. Hess*, 111 Ill. 2d 229 (1986)); *see also Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (Ill. 2004); *Smith v. Pavlovich*, 2009 Ill. App. LEXIS 882 (5th Dist. 2009); *Dolan v. Galluzzo*, 77 Ill. 2d 279 (Ill. 1979); *Garley v. Columbia LaGrange Memorial Hospital*, 351 Ill. App. 3d 398, 409 (1st Dist. 2004). In other words, if an expert is to render opinion testimony against a doctor, that expert must be a doctor.

It follows, therefore, that if plaintiff is to provide expert testimony that Ms. Schwarz, a licensed physician's assistant, was negligent or deliberately indifferent, he must do so with an expert that is also licensed as a physician's assistant. Dr. Barkoff is not a physician's assistant, she has never attended school as a physician's assistant and she is not licensed as a physician's assistant.

Indeed, when Dr. Barkoff was asked at her deposition whether she was familiar with the standard of care for a physician assistant practicing correctional medicine in 2013, she replied indirectly and with significant qualification. Specifically, she testified that she is only familiar with the standard of care merely because she reviewed IDOC and Wexford guidelines. *Barkoff Deposition* (4/12/17), attached as *Exhibit B*, at 35:13–36:10. This is simply not sufficient; the guidelines set forth by IDOC and Wexford do not establish the standard of care for a physician's assistant. This is because Illinois law is clear that while the policies may be information provided to the jury regarding standard of care, <u>the policies are not determinative of the standard of care.</u> *Heastie v. Roberts*, 877 N.E.2d 1064, 1088, 226 Ill. 2d 515, 553-554, 2007 Ill. LEXIS 1696, *56–57, 315 Ill. Dec. 735, 759. *See also Greenberg v. Michael Reese Hospital*, 83 Ill. 2d 282, 292–93, 415 N.E.2d 390, 47 Ill. Dec. 385 (1980); *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331–32, 211 N.E.2d 253 (1965). Illinois courts have made it crystal

clear that the standard of care needs to be established by testimony of an expert in the same medical specialty. While Dr. Barkoff may have read the policies and procedures from IDOC and Wexford, she does not know how those policies and procedures relate to the standard of care for a physician assistant treating an inmate in a correctional facility. It is clear that Dr. Barkoff is not an expert licensed in the same school of medicine as Ms. Schwarz and thus she cannot testify to what duty was owed by Ms. Schwarz and whether she breached that duty. Dr. Barkoff should be barred from presenting any such testimony as to Ms. Schwarz's care and treatment.

**B. Barring Dr. Barkoff from testifying to deviations from the standard of care that did not proximately cause injury.**

Plaintiff alleges that Ms. Schwarz's treatment of Mr. Williams was negligent and deliberately indifferent. Plaintiff again relies upon Dr. Barkoff to support this contention. *See Exhibit A*. While Barkoff testified that Ms. Schwarz deviated from the standard of care in numerous ways (in and of itself problematic, *see supra*), Dr. Barkoff did not provide opinions that all these deviations caused or contributed to cause Mr. Williams injury.

Dr. Barkoff should be barred from giving the following opinions of deviations from the standard of care since she failed to also present testimony that such a deviation proximately caused or contributed to the plaintiff's claimed injury and damage. *Borowski v. Von Solbrig*, 60 Ill.2d 418 (Ill. 1975). With respect to proximate cause, that element is not established where the medical expert testimony of causal connection is "contingent, speculative or merely possible." *Mengelson v. Ingalls Health Ventures*, 323 Ill. App. 3d at 75, quoting *Newell v. Corres*, 125 Ill. App. 3d 1087, 1092, 81 Ill. Dec. 283, 466 N.E.2d 1085 (Ill. 1984). Instead, plaintiff must prove, with medical expert testimony, that within a reasonable degree of medical certainty the defendant's breach in the standard of care is more probably than not the cause of the injury suffered. *See Mengelson v. Ingalls Health Ventures,* 323 Ill. App. 3d at 74-75 (Ill. App. Ct.

2001).

Specifically, Plaintiff has failed to causally link the following deviations to an injury:

### i. Ms. Schwarz should have ordered cholesterol blood tests and other cardiovascular testing

Dr. Barkoff is critical of Ms. Schwarz for not ordering a lipid profile upon intake to the Stateville NRC and throughout his 8 month stay at that prison. *See Exhibit A*. Dr. Barkoff is also critical of Ms. Schwarz for not further investigating abnormal peripheral pulses in October 9, 2013. *Id.* While her criticism of these actions/inactions is clear, Dr. Barkoff did not link these deviations to any injury suffered by Mr. Williams. In fact, Dr. Barkoff admitted that Mr. Williams never suffered an acute cardiovascular event. *See Exhibit B*, 199:14–20. As such, Dr. Barkoff should be barred from criticizing Ms. Schwarz as to her ordering a lipid/cholesterol blood tests or any other peripheral vascular testing as there was no causal link to any cardiac injury.

### ii. Schwarz's alleged mistreatment of blood sugars with respect to infections

Dr. Barkoff was critical of Ms. Schwarz's blood sugar management of Mr. Williams throughout his eight-month stay at Statesville NRC. Dr. Barkoff even claimed that the fungal infection and cellulitis suffered by Mr. Williams during this timeframe was because of the mismanagement of the blood sugar levels. However, Dr. Barkoff could not state with any certainty as to whether the blood sugar mismanagement proximately caused the infections, only that the high sugar levels create an environment that promotes infection. *Exhibit B*, p. 204:1–13. Dr. Barkoff could not establish to a reasonable degree of medical certainty that any mismanagement of the blood sugars proximately caused the infections. *Id.* As such, this testimony is speculative and plaintiff should be barred from presenting any criticism that the infections were related to the management of blood sugars. *Mengelson*, 323 Ill. App. 3d at 74-

76.

### C. Barring Dr. Barkoff from providing inappropriate pejorative testimony.

"Experts are not advocates in the litigation but sources of information and opinion." *See CFTC v. Oystacher*, No. 2015 C 9196, 2015 WL 9259899, at *6 (N.D. Ill. Dec. 18, 2015) (St. Eve., J.) (discussing in context of expert disqualification). Dr. Barkoff's expert report contains numerous instances of personal interjections which are pejorative in nature and touch upon ultimate issues for the jury to decide. Specifically, *inter alia*:

i.) That Ms. Schwarz "failed to recognize the impact of her poor clinical management on poor health outcomes" (Barkoff Report, Exh. A, at p. 2).

ii.) "Furthermore, Ms. Schwarz's distrust and dismissiveness of Mr. Williams's self-advocacy highlights her medical incompetence in providing Mr. Williams adequate cares." *Id.* at p. 22.

iii.) "Mr. Williams deserved better medical diabetes care than he was provided at Stateville under Ms. Schwarz's duty." *Id.* at p. 22.

iv.) "A medical practitioner who claims there is no need for insulin in a person who has been on insulin for over 13 years and who presents to intake with a glucose level of 223mg/dL, does not, in my professional opinion, understand the biology of Diabetes Mellitus or have the medical capacity to care for his chronic and complicated diabetes health." *Id.* at p. 13, ¶ 10.

v.) "Furthermore, the fact she doesn't believe his previous insulin use when she herself prescribed Mr. Williams insulin at Stateville during a previous incarceration proves that her medical insight and thoroughness are quite poor." *Id.* at p. 13, ¶ 13.

    vi.)    Either way, my opinion is that Ms. Schwarz acted medically irresponsibly in her poor medication ordering performance and her inability to recognize the recklessness of the error. *Id.* at p. 15, ¶ 18.

    vii.)    Dr. Barkoff testified that the insulin used in this case was not the one she preferred, but it is certainly cheap compared to the alternative. *Id.* at p. 198.

Dr. Barkoff's opinion is strewn with personal attacks against Ms. Schwarz that go beyond a clinical examination of the applicable standards of care and her subsequent opinion on whether Ms. Schwarz's care met that standard of care; as a result, the above may not contain all instances of these statements. The jurors—not Dr. Barkoff—have the final say on whether Ms. Schwarz's actions were reasonable. Dr. Barkoff's personal commentary on such matters is not appropriate under Rule 702 and should also be excluded under Rule 403, as such rhetoric is cumulative of Dr. Barkoff's anticipated testimony and is void of any probative value on its own. Accordingly, this Court should bar Dr. Barkoff from providing any personal or pejorative remarks at trial concerning the care that Plaintiff received while incarcerate.

    **D. Barring Plaintiff, either from Dr. Barkoff or otherwise, from providing inappropriate opinion testimony on Ms. Schwarz's state of mind.**

Elsewhere in her report, Dr. Barkoff attempts to opine that an entry by Ms. Schwarz in Plaintiff's medical record that he "'WANTS INSULIN??'" "takes on a mocking tone towards Mr. Williams and denigrates his own medical judgement of himself and his own medical history." <u>Ex. A</u> at 12, ¶ 8. She further states that this entry constitutes a "blatant disregard for his critical request for insulin and even flippant notation questioning his request for insulin." *Id.* Finally, Dr. Barkoff concludes that this notation "is a reflection of her deliberate indifference to Mr. Williams's well-being. *Id.*

Dr. Barkoff's opinions on the issue are provided without basis; she admitted during her deposition that she has never had training as to what the use of multiple question marks meant in a medical note, nor the use of all capitals in a medical note. Exh. B (Barkoff deposition excerpt, at 44 & 52). Accordingly, Dr. Barkoff's "opinion" on the issue is merely personal speculation or conjecture on her part as to what Ms. Schwarz's intent was when writing that note in Plaintiff's medical chart, constitutes impermissible advocacy, and falls entirely outside of competent testimony on the subject. FRE 703, FRE 601, FRE 403; *see also, e.g.*, *United States v. Schultz*, No. 14-cr-467-3, 2016 WL 7409911, U.S. Dist. LEXIS 177179 at *9 ("An expert's assertions about another person's "intent" are neither helpful nor admissible under Rule 702.") (N.D. Ill. Dec. 22, 2016) (Dow, J.); *Dahlin v. Evangelical Child & Family Servs.,* No. 01 C 1182, 2002 WL 31834881, 2002 U.S. Dist. LEXIS 24558 at *9–11 (citing, among others, *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) (dealing with deliberate indifference issue)).

Accordingly, this Court should bar Plaintiff, either through Dr. Barkoff, or Plaintiff, or other third party, from attempting to present any opinion on Ms. Schwarz's state of mind.

**2. Barring certain references or utilization of Plaintiff's grievances.**

Plaintiff may seek to introduce into evidence at trial grievances he has written regarding his claims. These documents should be excluded as inadmissible hearsay. Under Federal Rule of Evidence 801, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed R. Evid. 801. Evidence that constitutes hearsay should be excluded at trial unless it falls within one of the exceptions to Rule 801. See Fed R. Evid. 802. Plaintiff's grievance does not fall under any hearsay exception except that his grievance may qualify as a prior inconsistent statement or party admission against him pursuant to Fed R. Evid. 801(d)(1)(2) – should

defendants chose to place it into evidence on these grounds. Plaintiff cannot use it for this purpose. If Plaintiff believes that some hearsay exception applies, he should be required to make an offer of proof outside the presence of the jury.

**3. Barring plaintiff, plaintiff's counsel, and/or any witnesses from questioning, arguing, mentioning, or referring in any way, or introducing into evidence, any prior or ongoing lawsuits involving the Plaintiff or Defendants.**

"Evidence of a person's character or a trait of character is not admissible for proving action in conformity therewith..." Federal Rule of Evidence 404(a) ("FRE 404"). Evidence of other acts committed by a party is only admissible under FRE 404(b), if a four part test is satisfied. *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 494 (7th Cir. 1998). First, the evidence must be directed toward establishing a matter in issue other than the Defendant's alleged propensity to commit the act. *Id.* Second, the other acts must be similar enough and close enough in time to be relevant to the matter in issue. *Id.* Third, the evidence must be such that a jury could find that the act occurred and the defendant was the actor. *Id.* Finally, the probative value of the evidence must be outweighed by its prejudicial effect. *Id.*

There are no prior lawsuits that are sufficiently similar or close enough in time to be relevant to the matter at issue. There would be no other purpose for presenting prior lawsuits other than to imply that since Plaintiff has alleged that his rights were previously violated, or defendants previously violated Plaintiff's rights, then Plaintiff's rights were necessarily violated here. The very elements set for the by the Seventh Circuit prohibit such evidence. *Gastineau, supra***.** Additionally, the probative value of allowing Plaintiff to inquire or present evidence of any prior lawsuit would be substantially outweighed by its prejudicial effect. *Id.*

**4. Barring any prior grievances or complaints against Defendant Schwarz, or Defendant Schwarz's disciplinary records, if any.**

Plaintiff may attempt to provide evidence about grievances that he or other inmates filed against this Defendant other than those grievances that Plaintiff filed concerning the issues in this case, or seek to elicit information about this Defendant's disciplinary record, if any. Such inquiries or topics are not relevant to any party's claims or defenses, or, alternatively, constitute inadmissible propensity evidence predicated upon inadmissible hearsay evidence. FRE 401, 404, 802. Even if they were relevant, any probative value is substantially outweighed by the danger of unfair prejudice. *See* FRE 401, 403**.**

**5. Barring the existence of any liability insurance or indemnification on the part of Defendant.**

Such evidence is specifically precluded under the Federal Rules of Evidence. See FRE 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully."). Furthermore, such evidence is irrelevant to the party's claims and defenses; alternatively, any potential relevancy is substantially outweighed by the danger of unfair prejudice. FRE 401, 403.

**6. Barring all non-party witnesses from the courtroom until they are called to testify and their testimony is taken.**

Defendant hereby request, pursuant to Federal Rule of Evidence 615, that the Court enter an order barring any witnesses, other than parties to this action, from being present in the courtroom until their testimony is presented. FRE 615. Plaintiff has affirmatively noted that he seeks to have his expert witness, Dr. Barkoff, present in Court during this trial so that she can opine on testimony provided by Defendant during her examination.

Of course, any additional or alternative testimony elicited from Dr. Barkoff as a result of her presence in the courtroom would be barred as previously non-disclosed under Rule 26(a)(2)

and Rule 37, and would inherently (and unfairly) prejudice Defendant from being able to anticipate or present a defense against any additional or alterative theory that Dr. Barkoff would seek to present. Given Plaintiff's expressed intent, Defendants further request that this Court explicitly enter a sequestration order barring Dr. Barkoff from being advised of any testimony elicited by other witnesses in this case.

7. **Barring Plaintiff from presenting any opinion testimony under Rule 702, 703 and 705 from any treaters beyond the scope of their own observation or treatment.**

Plaintiff's proposed witness list includes medical professionals who were not disclosed in his Rule 26(a)(2) disclosures. Accordingly, Plaintiff's ability to elicit testimony from any medical witnesses that he desires to call should be limited to the factual grounds underlying each physician's observations, examinations, and treatment of Plaintiff. *See Blameuser v. Hasenfang*, 345 F. App'x 184, 187 (7th Cir. 2009) (a treating physician "is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party"); *Zurba v. United States*, 202 F.R.D. 590, 592 (N.D. Ill. 2001) ("[I]t is only when the treating physician gives opinions beyond the scope of his own observation and treatment that he is considered a 'retained' expert for purposes of Rule 26(a)(2).").

8. **Barring Plaintiff (individually) or any other lay witness from providing any medical or mental health opinions.**

This Court should bar the plaintiff and any other lay witnesses from testifying to medical or mental health opinions and conclusions that require specialized medical or mental health knowledge or involve repeating opinions of medical or mental health professionals.

Under Federal Rule of Evidence 701, a lay witness may offer opinion testimony only to the extent that it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on

scientific, technical, or other specialized knowledge within the scope of Rule 702." FRE 701. Lay witnesses cannot offer medical opinions that require scientific, technical, or other specialized knowledge. *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010). Furthermore, any attempt by Plaintiff or other lay witness to repeat alleged diagnoses, statements, or other evidence by treaters would constitute inadmissible hearsay. FRE 802; FRCP 26(a)(2); FRCP 37(c). Accordingly, Plaintiff or any lay person should not be allowed to "(1) provide a medical diagnosis of his injuries, or (2) testify that the alleged beating proximately caused his medical problems, because this goes beyond lay testimony based on [Plaintiff's] rational perceptions." *Smith v. Nurse,* No. 14-cv-5514, 2016 U.S. Dist. LEXIS 117083, at *16-17 (N.D. Ill. Aug. 31, 2016) (Dow, J.).

**9.     Barring evidence concerning future physical or emotional injury or treatment.**

Plaintiff has disclosed no competent opinions under Rule 702, 703, or 705 regarding his need for future medical or mental health treatment as a result of his claimed injuries from diabetes complications. Such testimony is certainly within the exclusive province of a competent medical or mental health professional, and based upon the specialized knowledge and expertise of such a professional  Because there is no evidence that the plaintiff will need medical or mental health care in the future, there is no evidence that the plaintiff will incur medical or mental health expenses in the future.  Accordingly, Plaintiff should not be allowed to argue or present any evidence pertaining to this issue. FRCP 26; FRCP 37(c).

**10.   Barring introduction into of any criticism regarding the assessment, care, or treatment (medical, or otherwise) of Plaintiff by any non-party**.

Plaintiff may attempt to present evidence or testimony critiquing the provision of medical or mental health care from other provider who may have encountered or treated him. For instance, Dr. Barkoff commented in her deposition that Mr. Williams requests to see a doctor or

nurse to discuss his meals were not returned. Ex. B, p. 108-09. This was not a function of the physician assistant, Ms. Schwarz, who is the only party to this case.

Plaintiff's attempt to introduce criticisms of non-parties will create a "trial-within-a-trial" setting that will unduly confuse the jury, especially given the inability of any non-party to properly defend themselves. Furthermore, there is significant danger that the jury will use such evidence as impermissible propensity evidence (*i.e.*, inferring that Plaintiff's allegations of improper treatment make it more likely that Defendant herself engaged in improper conduct) or that such evidence will otherwise unfairly prejudice jurors against Defendant. FRE 401; FRE 403; FRE 404(b); FRE 701.

**11. Barring plaintiff and plaintiff's counsel from arguing, mentioning, or introducing in any way, a contention that plaintiff is entitled to double recovery on his state law and federal law claims against Defendant**.

Plaintiff's deliberate indifference claim, medical malpractice claim, intentional infliction of emotional distress claim, and negligent infliction of emotional distress claim against Defendant is predicated upon the same operative facts and alleged injury. Illinois law allows only one recovery of damages for a single indivisible injury. *Duran v. Town of Cicero*, 653 F.3d 632 (7th Cir. 2011). Accordingly, Plaintiff should only be allowed to recover once with respect to his asserted claims against Defendant.

WHEREFORE, Defendants request that this Honorable Court grant Defendants' motions in *limine*, and provide Defendants such other and further relief as this Court deems just.

Respectfully submitted,

/s/ Peter J. Strauss
One of the Attorneys for Defendant

Michael R. Slovis (mslovis@cmvlaw.com)
Peter J. Strauss (pstrauss@cmvlaw.com)
Chad M. Skarpiak (cskarpiak@cmvlaw.com)
Cunningham, Meyer & Vedrine, P.C.
One E. Wacker Drive, Suite 2200
Chicago, Illinois 60601
(312) 578-0049
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on May 8, 2018, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Peter J. Strauss